IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

Appellee,

v.

DARIUS KEYON BENSON,

Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA, SPARTANBURG DIVISION
THE HONORABLE DONALD C. COGGINS, JR., PRESIDING

**BRIEF FOR APPELLANT**

Kimberly H. Albro
Assistant Federal Public Defender
FEDERAL PUBLIC DEFENDER'S OFFICE
1901 Assembly Street, Suite 200
Columbia, South Carolina 29201
Telephone: (803) 765-5088
**Counsel For Appellant**

# TABLE OF CONTENTS

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION ...... 1

ISSUE PRESENTED FOR REVIEW ............................................................ 2

STATEMENT OF THE CASE AND FACTS ................................................ 3

SUMMARY OF THE ARGUMENT ............................................................ 6

ARGUMENT ............................................................................................... 7

  STANDARD OF REVIEW ....................................................................... 7

  THE DISTRICT COURT'S SENTENCE WAS NOT UNREASONABLE
  AND WAS NOT OTHERWISE IMPOSED IN VIOLATION OF LAW
  BECAUSE THE COURT EXPLAINED THE SENTENCE, AND ANY
  ERROR WAS HARMLESS ....................................................................... 7

    A. Even if the district court erred by not giving a reason for the upward
       variance for the custodial sentence, this Court previously held such an error
       is harmless and the Appellant requested the sentence given ......................... 8

    B. It is not error to impose supervised release when a defendant has
       overserved the custodial portion of his sentence .......................................... 12

CONCLUSION ......................................................................................... 15

CERTIFICATE OF COMPLIANCE ......................................................... 17

# TABLE OF AUTHORITIES

## Cases

*Anders v. California*, 386 U.S. 738 (1967) ............................................................ 2, 6, 7, 8, 15

*Gall v. United States*, 552 U.S. 38 (2007) ........................................................ 7, 8, 9, 10, 11

*Rita v. United States*, 551 U.S. 338 (2007) ........................................................................ 8

*United States v. Benson*, No. 19-4543, 2022 WL 1515538 (4th Cir. May 13, 2022) .......... 3

*United States v. Blue*, 877 F.3d 513 (4th Cir. 2017) ........................................................ 9, 10

*United States v. Carter*, 564 F.3d 325 (4th Cir. 2009) ........................................................ 9

*United States v. Chestnut*, 858 F. App'x 60 (4th Cir. 2021) ................................................ 13

*United States v. Clemons*, 901 S.E.2d 280 (S.C. 2024) ........................................................ 3

*United States v. Helton*, 782 F.3d 148 (4th Cir. 2015) .................................................... 13, 14

*United States v. Hickman*, 626 F.3d 756 (4th Cir. 2010) .................................................... 12

*United States v. Ingram*, No. 21-4348, 2022 WL 3210713 (4th Cir. Aug. 9, 2022) .......... 15

*United States v. Jackson*, 124 F.3d 607 (4th Cir. 1997) ...................................................... 12

*United States v. Johnson*, 529 U.S. 53 (2000) ............................................................ 13, 14, 15

*United States v. Ketter*, 908 F.3d 61 (4th Cir. 2018) ........................................ 10, 11, 12, 13

*United States v. Montes-Pineda*, 445 F.3d 375 (4th Cir. 2006) ............................ 8, 11, 12, 15

*United States v. Moreland*, 437 F.3d 424 (4th Cir. 2006) ........................................... 8, 11, 12

*United States v. Savillon-Matute*, 636 F.3d 119 (4th Cir. 2011) .................................... 10, 11

*United States v. Stephens*, 549 F.3d 459 (6th Cir. 2008) ...................................................... 7

## Statutes

18 U.S.C. §922(g)(1) ............................................................................................................ 1, 3

18 U.S.C. §922(g)(9) .................................................................... 1, 3

18 U.S.C. §924(a)(2) ...................................................................... 1

18 U.S.C. §924(e) ............................................................................ 1

18 U.S.C. §3231 .............................................................................. 1

18 U.S.C. §3553(a) ........................................................ 5, 8, 9, 10, 11, 14

18 U.S.C. §3559 ............................................................................ 13

18 U.S.C. §3583(b)(2) .................................................................. 13

18 U.S.C. §3742(a) .......................................................................... 1

28 U.S.C. §1291 .............................................................................. 1

28 U.S.C. §2255 .......................................................................... 1, 3

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

The basis for jurisdiction in the district court is 18 U.S.C. §3231, which provides in pertinent part that the district courts shall have original jurisdiction, exclusive of state courts, of all offenses against the laws of the United States. Appellant Darius Keyon Benson was charged in a one-count indictment of violating 18 U.S.C. §922(g)(1), (g)(9), §924(a)(2) and §924(e). JA 17-19. Benson pled guilty and was sentenced pursuant to 18 U.S.C. §924(e), the Armed Career Criminal Act (ACCA). JA 9. On Benson's later motion filed pursuant to 28 U.S.C. §2255, the district court entered an amended judgment sentencing Benson to time-served and two years of supervised release. JA 47-49. The amended judgment was entered on August 16, 2024. JA 16.

Benson filed a timely notice of appeal on August 30, 2024. JA 53. Jurisdiction of this Court is authorized by 28 U.S.C. §1291 and 18 U.S.C. §3742(a).

# ISSUE PRESENTED FOR REVIEW

After carefully examining the record and researching the relevant law for any violation of the United States Constitution, applicable federal statutes, the Federal Rules of Criminal Procedure, and the United States Sentencing Guidelines, counsel has concluded there appear to be no meritorious grounds for appeal. Thus, counsel submits this brief in accordance with *Anders v. California*, 386 U.S. 738 (1967).

Nonetheless, counsel requests this Court review the record and consider: (1) whether the district court committed legal error when it imposed a time-served sentence which was almost three times the high-end of his amended guideline range without sufficient explanation for the upward variance, and (2) whether the court erred when it imposed a two-year term of supervised release after Benson asked for a variant sentence of no supervised release, where the court failed to adequately explain the sentence.

## STATEMENT OF THE CASE AND FACTS

On January 9, 2018, Benson was charged in a one-count indictment of violating

18 U.S.C. §922(g)(1), (g)(9). JA 17. Benson ultimately pled guilty on December 20,

2018. JA 8. The probation office prepared a Presentence Report (PSR) for sentencing.

Because Benson had three criminal domestic violence convictions, he was deemed an

armed career criminal in his 2019 PSR. JA 22. On May 29, 2019, Benson was

sentenced under the ACCA to 180 months. JA 9.

Benson appealed. This Court affirmed his conviction and sentence on May 13,

2022. *United States v. Benson*, No. 19-4543, 2022 WL 1515538 (4th Cir. May 13, 2022).

Benson pursued additional relief, including motions for compassionate release

and pursuant to 28 U.S.C. §2255. JA 11, JA 14. His compassionate release motion was

denied. JA 12.

On August 10, 2023, Benson filed a §2255 motion arguing that he had been

wrongly sentenced under the ACCA. JA 14. On November 6, 2023, the government

sought an abeyance of Benson's motion because the South Carolina Supreme Court

had accepted a certified question about whether South Carolina CDV offenses could

be committed recklessly, thereby excluding CDV as an ACCA predicate. JA 14. Once

*United States v. Clemons*, 901 S.E.2d 280 (S.C. 2024) issued, the parties agreed re-

sentencing was appropriate. An amended PSR issued. JA 54-76. Benson's re-

sentencing was held on August 16, 2024. JA 20-46. Prior to the hearing, Benson filed

a motion requesting that he be re-sentenced to time-served without a term of

supervised release. JA 15. Because Benson had served almost 76 months and his amended guideline range was 21-27 months, Benson submitted that he should not serve any supervised release term. JA 15; JA 28-30; JA 34. In support of his request, Benson noted he had served 48 months more than the high-end of his properly calculated guideline range and he pointed to his relatively minor disciplinary history at the BOP. JA 15. Furthermore, Benson pointed out that he had participated in programming and worked to improve himself while incarcerated. JA 15; JA 28-30; JA 34. At the end of Benson's sentencing memo, he asked for "time served with no term of supervised release to follow." JA 15 (*see* ECF No. 160 at 2).

At the sentencing hearing, the court agreed with Benson and the government that Benson should be re-sentenced based on the amended PSR. JA 23. Benson's guideline range was 21-27 months. JA 26. The guideline recommendation for supervised release was one to three years, but the statutory term is zero to three years. JA 69-70. The government submitted a time-served sentence was appropriate. JA 27. However, the government requested a guideline term of supervised release. JA 27. The government claimed that supervised release would provide tools such as "vocational rehabilitation" to help Benson transition from incarceration to a productive citizen. JA 27.

Benson did not object to the government's request for a time-served sentence. JA 27-35. Benson presented numerous mitigating reasons why he should not be subject to a term of supervised release. JA 27-35. First, Benson took advantage of

programming while at the BOP, including in the areas of OSHA, manufacturing and HVAC. JA 28, JA 34. He took parenting and anger management classes and formed companies in anticipation of re-joining the outside world. JA 30, JA 34. Benson has family and friend support. JA 29. A friend spoke at his hearing, and indicated Benson had a job available with Change Agent, a group who helps former inmates with training, employment, housing and moral support. JA 31-32. Furthermore, Benson had living arrangements with his grandmother, who recently lost her daughter and needs support herself. JA 33.

The court imposed a time-served sentence "considering all of the 3553(a) factors". JA 35. The court stated generally, but with no examples specific to Benson, that it considered the §3553(a) factors, presentations of counsel and witnesses and Benson's allocution as reasons for the time-served sentence. JA 37. On the statement of reasons (SOR), the court checked that a guideline sentence was imposed. JA 79. The district court did not indicate in the SOR any reasons for a departure or variance. JA 79-80.

The court indicated it would impose supervised release because the suddenness of his release did not allow for pre-release planning and transition. JA 35-36. The court also mentioned Benson's criminal history as a factor. JA 36. The court specifically cited reasons favorable to Benson, which was that his criminal history occurred when he was a teenager and he was now 40 years old, that he had acquired

skills while incarcerated and had a minor BOP disciplinary history. JA 35-36. The court imposed a two-year term of supervised release. JA 37.

The amended judgment was entered on August 16, 2024. JA 47-52. Benson filed a timely notice of appeal on August 30, 2024. JA 53.

## SUMMARY OF THE ARGUMENT

Because counsel submits this brief in accordance with *Anders*, 386 U.S. 738, counsel requests this Court review the record and consider: (1) whether the district court committed legal error when it imposed a time-served sentence which was almost three times the high-end of his amended guideline range without sufficient explanation for the upward variance, and (2) whether the court erred when it imposed a two-year term of supervised release after Benson asked for a variant sentence of no supervised release. Even if the court failed to adequately explain the sentence in light of the mitigating factors Benson raised, any error was harmless.

# ARGUMENT

## STANDARD OF REVIEW

In reviewing any sentence, "whether inside, just outside, or significantly outside the Guidelines range," this Court applies a "deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41 (2007). This Court must first "ensure that the district court committed no significant procedural error." *Id.* at 51. Once this Court finds the sentence procedurally reasonable, this Court will "consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Id.*; *see also United States v. Stephens*, 549 F.3d 459, 465 (6th Cir. 2008).

## THE DISTRICT COURT'S SENTENCE WAS NOT UNREASONABLE AND WAS NOT OTHERWISE IMPOSED IN VIOLATION OF LAW BECAUSE THE COURT EXPLAINED THE SENTENCE, AND ANY ERROR WAS HARMLESS

Pursuant to *Anders*, counsel reviewed Benson's case for errors, and asks this Court to review several sentencing issues. First, under his amended guideline range, Benson went from being an armed career criminal subject to a statutory minimum sentence of 180 months to having a guideline range of 21-27 months. JA 22, JA 78. Instead of imposing a sentence within the guideline range, the court gave Benson a sentence of time-served. JA 35, JA 48. Benson had already been incarcerated since April 24, 2018, or roughly 76 months at the time of re-sentencing. JA 55. Therefore, his time-served sentence was equivalent to an upward variance of 49 months from the high-end of the amended guideline range. The district court provided no explanation

for this large upward variance. Furthermore, the district court indicated on the SOR that it had imposed a sentence within the guideline range. JA 79. The SOR does not reflect any reasons for a variance or departure. JA 79-80.

Because Benson had served far in excess of his amended guideline range, his counsel requested a variance in the form of not imposing a term of supervised release. JA 15; JA 28-30. Pursuant to *Anders*, Benson asks the Court to review the record to determine if this is error.

### A. Even if the district court erred by not giving a reason for the upward variance for the custodial sentence, this Court previously held such an error is harmless and the Appellant requested the sentence given

The sentencing process before the district court should begin with correct calculation of the sentencing guideline range, as the guidelines "should be the starting point and the initial benchmark." *Gall,* 552 U.S. at 49 (citing *Rita v. United States,* 551 U.S. 338, 347-48 (2007)). On appeal of a sentence, this Court must first determine if the sentence was procedurally reasonable. *Id.* at 51. This analysis includes whether the guideline range was properly calculated, whether the guidelines were treated as mandatory, if the §3553(a) factors were considered, if the sentence was based on erroneous facts and whether the reasons for the sentence were adequately explained. *Id.* For example, an inadequate statement of reasons may render the sentence procedurally unreasonable. *United States v. Montes-Pineda*, 445 F.3d 375, 378 (4th Cir. 2006) (citing *United States v. Moreland*, 437 F.3d 424, 434 (4th Cir. 2006)).

The court must not presume the guideline range is reasonable, however, but must make an "individualized assessment" based on arguments from both parties about the appropriate sentence and based on the 18 U.S.C. §3553(a) factors. *Gall,* 552 U.S. at 49-50. This individualized assessment "must provide a rationale tailored to the particular case at hand . . . " that allows adequate review by the appellate courts. *United States v. Carter*, 564 F.3d 325, 330 (4th Cir. 2009). Where a sentencing court hears a defendant's arguments and engages with them at a hearing, this Court may infer from that discussion that specific attention has been given to those arguments. *See United States v. Blue*, 877 F.3d 513, 521 (4th Cir. 2017). However, without such indication, this Court has declined to guess at the district court's reasons for a particular sentence. *Id.*

Benson's amended guideline range became 21-27 months. JA 78. Benson had served approximately 76-months at the time of his resentencing. JA 15-16; JA 55. Although the practical effect of a time-served sentence is that Benson served approximately 49 months higher than the high-end of the amended guideline range, the district court did not give any reasons for the excessive variance. JA 35-38. Regarding imposition of the custodial part of the sentence, the court only said Benson had served sufficient incarceration and a time-served sentence "would be appropriate considering all of the 3553(a) factors". JA 35; JA 37. The court did not identify any factor specific to Benson. The court did not address the mitigation raised by Benson. JA 35-37. The court did not engage with counsel, Benson or the people speaking on Benson's behalf such that this Court can infer it considered these issues when

imposing sentence. JA 27-35; *Blue*, 877 F.3d at 521. Likewise, on the SOR, the district

court indicated it had given a sentence within the guideline range. JA 79. The court

also failed to give reasons for a variance or departure in the SOR. JA 79-80.

Therefore, it appears the sentence is procedurally unreasonable because the district

court failed to adequately explain the sentence or to properly address the §3553(a)

factors. *Gall*, 552 U.S. at 51.

However, even if there is an error, reasonableness of the sentence is subject to

the harmless error review. The harmless error analysis involves two steps: (1)

"knowledge that the district court would have reached the same result even if it had

decided the guidelines issue the other way," and (2) "a determination that the sentence

would be reasonable even if the guidelines issue had been decided in the defendant's

favor...." *United States v. Savillon-Matute*, 636 F.3d 119, 123 (4th Cir. 2011) (cleaned up).

In a case involving very similar facts, where the defendant was given a time-served

sentence even though his time in custody far exceeded the amended guideline range,

this Court held:

> [A]ny error was harmless. This is so because, although the court
> did not explain its variance, it expressly recognized that Ketter
> had "overserved his time." And in light of that "overserved" time,
> the court significantly reduced the period of Ketter's supervised
> release from five years to two years—one year below Ketter's new
> statutory maximum.

*United States v. Ketter*, 908 F.3d 61, 64, 67 (4th Cir. 2018). Perhaps even more

importantly, Ketter could not show that his substantial rights were affected because

"any error did not have the practical effect of prolonging Ketter's incarceration by even one day." *Id.* at 67.

Even if there was an error in the guidelines calculation or the court failed to consider the §3553(a) factors, the district court explicitly stated that it would impose the same sentence as a variance. JA 41. Furthermore, like *Ketter*, Benson's custodial sentence "did not have the practical effect of prolonging [Benson's] incarceration by even one day", so Benson cannot show that his substantial rights were affected. *Ketter*, 908 F.3d at 67. Any error was harmless. *Savillon-Matute*, 636 F.3d at 123.

Only if the sentence was procedurally reasonable may the court look at whether the sentence was substantively reasonable. *Gall*, 552 U.S. at 51. Courts look at the totality of the circumstances, including any deviation from the guideline range, to determine substantive reasonableness. *Id.* A "'sentence may be substantively unreasonable if the court relies on an improper factor or rejects policies articulated by Congress or the Sentencing Commission.'" *Montes-Pineda*, 445 F.3d at 378 (citing *Moreland*, 437 F.3d at 434).

Here, the court did not address improper factors when imposing the time-served sentence. It indicated it considered the §3553(a) factors. JA 35. The court also addressed that the totality of circumstances warranted the sentence imposed, which would address substantive reasonableness. JA 41. The district court did not rely on improper factors or reject Congressional or Sentencing Commission policies. *See*

*Montes-Pineda*, 445 F.3d at 378 (citing *Moreland*, 437 F.3d at 434). And, as explained above, any error was harmless.

Finally, "the invited error doctrine recognizes that a court cannot be asked by counsel to take a step in a case and later be convicted of error, because it has complied with such request." *United States v. Jackson*, 124 F.3d 607, 617 (4th Cir. 1997) (cleaned up). This court has never reviewed errors invited by the appellant. *United States v. Hickman*, 626 F.3d 756, 772 (4th Cir. 2010). Here, Benson asked for a time-served sentence. JA 15 (*see* ECF No. 160 at 2). The court imposed a time-served sentence. JA 37. So, for this independent reason, Benson cannot show that his custodial sentence was unreasonable.

## B. It is not error to impose supervised release when a defendant has overserved the custodial portion of his sentence

Even though Benson has served the custodial portion of his sentence, "an appeal of a sentence is not moot where success on the appeal could alter the length or conditions of the supervised release portion of the defendant's sentence." *Ketter*, 908 F.3d at 66 (cleaned up). Therefore, Benson asks this Court to consider if there was error in imposing a two-year supervised release term, particularly since Benson asked for a variant sentence of no supervised release.

At his re-sentencing, Benson asked for no supervised release to compensate for the amount of time he spent in prison that far exceeded his amended guideline range of 21-27 months. JA 15; JA 29-30; JA 34. The statutory parameters for supervised

release in Benson's case pursuant to 18 U.S.C. §3559 and §3583(b)(2) call for no more than three years of supervised release. JA 69. The guideline range for supervised release is one to three years. JA 70. Therefore, Benson's request of no supervised release falls within the statutory limits.

This United States Supreme Court has previously rejected that an overserved term of incarceration automatically offsets a term of supervised release:

> The objectives of supervised release would be unfulfilled if excess prison time were to offset and reduce terms of supervised release. Congress intended supervised release to assist individuals in their transition to community life. Supervised release fulfills rehabilitative ends, distinct from those served by incarceration

*United States v. Johnson*, 529 U.S. 53, 59 (2000). The Supreme Court reversed the Sixth Circuit's determination that the supervised release term must be reduced by the excess amount of time spent in prison. *Id.* at 58-60. Similarly, this Court agreed that "a defendant has no *entitlement* to credit his overserved custodial time against his term of supervised release." *Ketter*, 908 F.3d at 66. This Court has held the district court did not abuse its discretion when it refused to reduce a defendant's term of supervised release when the defendant had overserved his term of imprisonment. *See United States v. Chestnut*, 858 F. App'x 60 (4th Cir. 2021).

Therefore, since the district court retained discretion to impose a supervised release term, any review must be to determine if the term imposed was unreasonable. "This court will affirm a sentence when it is within the statutorily prescribed range and is reasonable." *United States v. Helton*, 782 F.3d 148, 151 (4th Cir. 2015) (cleaned

up). Even when the term of supervised release is within the statutory limits and the guidelines range, the appellate court must also review whether the district court considered the relevant §3553(a) factors and adequately explained the sentence. *Id.* at 151-152.

Here, the district court imposed a two-year term of supervised release, which is below the statutory maximum and within the guideline range. JA 69-70. The court explained why it imposed supervised release, noting that Benson was unexpectedly released from prison without any time to prepare for reintegration into society. JA 35-36. The court indicated the term of supervised release was not punitive, but was meant to assist Benson in transitioning from prison to society. JA 35-36. The court also considered the §3553(a) factors of Benson's criminal history as compared to his history and characteristics and post-sentencing conduct. JA 36-37. As this Court previously held, the sentence was not procedurally unreasonable in light of the individualized and lengthy explanation for the term of supervised release. *Helton*, 782 F.3d at 154.

Furthermore, the district court's explanation comports with the Supreme Court's holding that supervision serves a different purpose than incarceration. *Johnson*, 529 U.S. at 59. The district court indicated it was imposing supervision to help Benson transition back into his community, a purpose recognized in *Johnson*. JA 35-36. In line with the Supreme Court, the district court informed Benson he could seek early termination of supervised release. JA 40-41; *Johnson*, 529 U.S. at 60. Since

"equitable considerations of great weight exist when an individual is incarcerated beyond the proper expiration of his prison term", the Supreme Court recognized that early release from supervised release is within a district court's discretion to offset the harm if the defendant adjusts well to society. *Johnson*, 529 U.S. at 60.

Likewise, Benson's term of supervised release is substantively reasonable. It is within both the statutory and guideline limits. The district court gave an explanation for imposing supervised release and did not rely on improper factors or reject relevant policies. *Montes-Pineda*, 445 F.3d at 378 (citation omitted).

In sum, counsel has reviewed Benson's case for errors and cannot find meritorious issues to raise. Therefore, this brief is submitted pursuant to *Anders*. In an *Anders* appeal, this Court remanded to correct a clerical error in the judgment where the incorrect statute of conviction was listed. *United States v. Ingram*, No. 21-4348, 2022 WL 3210713, at *3 (4th Cir. Aug. 9, 2022). Therefore, if this Court chooses, it can remand to correct the SOR, where the district court noted Benson's sentence was within the guideline range. JA 79.

## <u>CONCLUSION</u>

In accordance with the requirements of the decision of the United States Supreme Court in *Anders v. California*, 386 U.S. 738 (1967), appointed counsel for appellant has reviewed both the facts and legal issues in this case. It is counsel's opinion that there are no legal issues that were not properly raised or disposed of by the trial court and that there are no non-frivolous grounds for an appeal in this case.

A copy of this brief has been served on appellant via United States mail and he was

advised of his right to make a *pro se* submission to this Court.

<div style="margin-left: 40%;">

Respectfully submitted,


s/ Kimberly H. Albro
KIMBERLY H. ALBRO, ESQUIRE
Assistant Federal Public Defender
Federal Public Defender's Office
1901 Assembly Street, Suite 200
Columbia, South Carolina 29201
Telephone: (803) 765-5088
**ATTORNEY FOR APPELLANT**
**APPEAL NUMBER: 24-4489**

</div>

Columbia, South Carolina
December 4, 2024

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

<u>NO. 24-4489</u>    CAPTION: <u>UNITED STATES OF AMERICA VS.
DARIUS KEYON BENSON</u>

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT</u>

Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

**Type-Volume Limit for Briefs**: *Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).*

**Type-Volume Limit for Other Documents If Produced Using a Computer:**

*Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P.5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).*

**Typeface and Type Style Requirements:** *A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10 ½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).*

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. 32(f)(cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

**XX**    this brief or other document contains <u>3,567</u> [state number of] words

This brief or other document complies with the typeface and type style limitation because:

**XX**    this brief has been prepared in a proportionally spaced typeface using **Word** *[identify word processing program]* in **Garamond (14-Point)** *[identify font size and type style]*; or

____    this brief has been prepared in a monospaced typeface using _____ *[identify word processing program]* in *[identify size and type style]*.

<u>s/KIMBERLY H. ALBRO</u>

Party Name: <u>Darius Keyon Benson</u>

Dated: <u>December 4, 2024</u>